IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ROSARIO FRANCESCHI-VÁZQUEZ,

   **Plaintiff,**

              **v.**

CVS PHARMACY,

   **Defendant.**

**Civil No.** 14-1694 (FAB)

## OPINION AND ORDER

BESOSA, District Judge.

Rosario Franceschi-Vázquez ("Franceschi") brought suit against her former employer, CVS Pharmacy ("CVS"), alleging that CVS discriminated against her on the basis of her age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-34, Puerto Rico Law 100, P.R. Laws Ann. tit. 29, § 146, and Article 1802 of the Puerto Rico Civil Code, id. tit. 31, § 5141. (Docket No. 1.)

Before the Court is CVS's motion for summary judgment. (Docket No. 19.)  Franceschi opposed the motion, (Docket No. 23), and CVS replied, (Docket No. 28).  For the reasons that follow, CVS's motion for summary judgment is **GRANTED**.

### I.  SUMMARY JUDGMENT STANDARD

A court will grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The role of summary judgment is to "pierce the boilerplate of the pleadings and

assay the parties' proof in order to determine whether trial is actually required." Tobin v. Fed. Exp. Corp., 775 F.3d 448, 450 (1st Cir. 2014) (quoting Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992)).  "When the nonmovant bears the burden of proof on a particular issue, she can thwart summary judgment only by identifying competent evidence in the record sufficient to create a jury question." Id. at 450-51.  The Court draws all reasonable inferences from the record in the light most favorable to the nonmovant, but it disregards unsupported and conclusory allegations. McGrath v. Tavares, 757 F.3d 20, 25 (1st Cir. 2014).

## II.   FACTUAL BACKGROUND[1]

CVS hired Franceschi on January 11, 2010, when she was fifty-two years old.  See Docket Nos. 19-4 at p. 8; 24-1 (reporting Franceschi's date of birth as September 21, 1957).  Franceschi began working for CVS as a part-time clerk/cashier at its store in Old San Juan, (Docket No. 19-4 at p. 4), even though her initial phone interview in October 2009 was for a position in the CVS

---

[1] The Court draws these uncontested facts from materials submitted by CVS and Franceschi.  Rather than submit a separate statement of additional facts set forth in numbered paragraphs, which would comply with Local Rule 56(c), Franceschi included a ten-page "relevant facts" section in her memorandum in opposition to CVS's motion for summary judgment.  Several of these "relevant facts" have no citation, cite to allegations in Franceschi's complaint that were denied in CVS's answer, and cite to incorrect materials and page numbers in the record.  The Court ignores these unsupported allegations and includes only facts for which it found support in the record.  See Fed. R. Civ. P. 56(c).

beauty department, (Docket No. 23-3).  Franceschi's duties as a
clerk/cashier included operating a cash register, completing price
changes, maintaining the check-out area, stocking shelves, and
occasionally cleaning the store.  (Docket No. 19-4 at pp. 4-5.)

Generally, CVS employees worked rotating shifts and were
expected to work closing hours a few days per week.  (Docket
No. 19-3 at p. 8.)[2]  Franceschi initially worked closing hours, but
her manager switched her to day shifts because Franceschi used
public transportation to get to work.  Id. at pp. 9-11.

During Franceschi's three and a half years working for CVS,
seven other women were hired or promoted to work in the beauty
department at CVS's Old San Juan store on the following dates:
January 17, 2010 (Mónica Ortiz, full-time); March 7, 2010 (Dagmar
Ríos, part-time); April 18, 2010 (Ninoshka Diaz, full-time); May 2,
2010 (Valerie Rodríguez-Álvarez, full-time); October 3, 2011
(Rosell Belmont-Monell, part-time); April 1, 2012 (Érika Pardo,
part-time); and June 9, 2013 (Ana Ramos, part-time).  See Docket
No. 19-7.  All of these women were in their twenties or thirties.
See id.

On April 1, 2012, CVS promoted Franceschi to work in the
beauty department at the Old San Juan store as a part-time beauty
advisor.  See Docket Nos. 19-3 at pp. 16-18; 19-8.  Her duties

---

[2] When citing to the transcript of Franceschi's deposition, (Docket
No. 19-3), the Court uses the page numbers of the docket entry and
not the original page numbers of the transcript.

included meeting or exceeding personal sales and margin targets, participating in a sales-driven culture in the beauty department, performing light maintenance, and attending vendor training sessions. (Docket No. 19-4 at p. 5.)

Six months later, on October 14, 2012, CVS promoted Franceschi to full-time beauty advisor. See Docket Nos. 19-4 at p. 5; 19-8. Franceschi was the only full-time employee in the beauty department, so her manager asked her to work closing hours at least twice a week, and she agreed. (Docket No. 19-3 at pp. 23-24.) Other employees who previously worked full-time in the beauty department had also worked closing hours. Id. at pp. 12-13.

Eight months later, on June 5, 2013, Franceschi's manager asked her to clean a refrigerator that stored dairy products. (Docket No. 19-3 at p. 26.) CVS's store manager had the discretion to ask all employees (except those working in the pharmacy) to assist in different areas of the store depending on business needs. (Docket No. 19-6 at p. 2.) While cleaning the refrigerator, Franceschi was injured. (Docket No. 24-1.) The State Insurance Fund Corporation placed her on rest until June 15 and released her to return to work on June 16. (Docket No. 24-2.)

Shortly before she was set to return to work, Franceschi received a call from her supervisor, who informed her that she was scheduled to work closing hours all week. (Docket No. 19-3 at pp. 27-28.) When Franceschi returned to work, she spoke to her

manager and told him that she could not work closing hours every night because she had a disabled daughter.  Id.  Her manager responded by telling Franceschi to contact Human Resources.  Id. Franceschi called Human Resources and was told that because CVS does not provide reasonable accommodations for employees' relatives' conditions, it was up to Franceschi's manager to grant her the schedule request.  Id. at pp. 28-29.  When Franceschi told her manager this, he said that he needed someone closing every night in the beauty department and that if she could not do that, she would have to resign from the beauty department before he would put her back on the schedule.  Id.

On June 25, 2013, Franceschi submitted a letter of resignation from her position in the CVS beauty department, explaining that "personal reasons of a family medical nature" prevented her from being able to work night shifts.  (Docket No. 24-3.)  She stated that she was willing to work in another CVS department and was available from 8:00 a.m. to 8:00 p.m.  Id.

On July 7, 2013, CVS changed Franceschi from the position of full-time beauty advisor to the position of full-time clerk/cashier.  (Docket No. 19-7 at p. 3.)  Her salary did not change.  (Docket No. 19-10.)  On her third day of returning to work as a cashier, the store was very busy, but her manager refused to call other employees to provide back-up support at the cash registers because the other employees were working on a special

Civil No. 14-1694 (FAB)                                                    6

assignment.  (Docket No. 19-3 at pp. 30-31.)  On subsequent days,
Franceschi's manager assigned her to the self-checkout area while
other employees worked on a special assignment for the beauty
department.  Id. at p. 31.  On July 15, 2013, Franceschi submitted
a letter of resignation from CVS.  (Docket No. 24-4.)

     During her three and a half years working at CVS, employees
made three age-related comments to Franceschi.  First, on an
unknown date when Franceschi received a letter from her health
insurance company that incorrectly had the year 1800 on it,
Franceschi's supervisor said "I knew you were old, but not that
old."  (Docket No. 19-3 at p. 41.)  Second, on another unknown
date, a female supervisor told Franceschi "I'm a lettuce and you
are the grass."  Id. at p. 56.  Third, on several occasions when
Franceschi would go to the backroom to retrieve supplies, two male
employees would say "Be careful that you don't fall because we
cannot find your parts."  Id. at pp. 45-47.  After Franceschi
complained about this third comment to an assistant store manager,
the two male employees stopped making the comment to Franceschi.
Id. at pp. 50-51.

     On September 18, 2013, Franceschi filed a charge of
discrimination against CVS with the Puerto Rico Anti-Discrimination
Unit ("ADU").  (Docket No. 24-6.)

### III.  ADEA CLAIMS

The ADEA makes it unlawful to "refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  Defendant CVS argues that it is entitled to summary judgment on Franceschi's ADEA claim because (1) Franceschi's refusal to hire and failure to promote claims are time-barred; (2) Franceschi's allegations that are not time-barred do not constitute actionable adverse employment actions; (3) Franceschi cannot establish that she was subjected to a hostile work environment; and (4) Franceschi cannot establish that she was constructively discharged.  (Docket Nos. 19-20.)

### A.  Timeliness of Refusal to Hire and Failure to Promote Claims

Before bringing suit in federal court, an ADEA plaintiff in Puerto Rico must file an employment discrimination charge with the Equal Employment Opportunity Commission ("EEOC") or the ADU[3] "within 300 days after the alleged unlawful practice occurred," 29 U.S.C. § 626(d)(1)(B).  See Am. Airlines, Inc. v. Cardoza-Rodríguez, 133 F.3d 111, 122 (1st Cir. 1998).  In discussing an analogous 300-day time bar for Title VII claims, the

---

[3] In Puerto Rico, a charge filed with the ADU serves as a simultaneous filing with the EEOC.  See Rivera-Rivera v. Thyssenkrupp Elevator Corp., Civil No. 14-1478(SEC), 2015 WL 5719799, at *2 (D.P.R. Sept. 29, 2015) (Casellas, J.) (describing the workshare agreement between the EEOC and the ADU).

United States Supreme Court held that an unlawful employment
practice that is a "discrete discriminatory act" must be alleged in
a charge filed within 300 days after the discrete act occurred.
Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002); see
Ramírez Rodríguez v. Boehringer Ingelheim Pharm., Inc., 425 F.3d
67, 79 n.14 (1st Cir. 2005) (applying Morgan to an ADEA claim).
Thus, "[e]ach discrete discriminatory act starts a new clock for
filing charges alleging that act," and time-barred acts are not
actionable, "even when they are related to acts alleged in timely
filed charges."   Morgan, 536 U.S. at 113.   The Supreme Court
identified "refusal to hire" and "failure to promote" as easily
identifiable discrete acts.   Id. at 114.

     Here, Franceschi alleges in her complaint that CVS refused to
hire her for a position in the beauty department in January 2010,
and thereafter, repeatedly failed to promote her from her part-time
position as a clerk/cashier when full-time positions in the beauty
department became available.   (Docket No. 1 at pp. 2-5.)   It is
uncontested, however, that CVS promoted Franceschi to part-time
beauty advisor on April 1, 2012, and to full-time beauty advisor on
October 14, 2012. See Docket Nos. 19-3 at pp. 16-18; 19-4 at p. 5;
19-8.  Thus, all of the alleged discriminatory actions concerning
CVS's refusal to hire and failure to promote Franceschi occurred
before October 14, 2012.   Franceschi waited until September 18,
2013, more than 300 days later, to file a discrimination charge

against CVS with the ADU.  (Docket No. 24-6.)  Her refusal to hire
and failure to promote claims are therefore time-barred.

Franceschi attempts to circumvent this fatal flaw by applying
the continuing violation doctrine, which allows a plaintiff to
recover "for discriminatory acts that otherwise would be
time-barred so long as a related act fell within the limitations
period," Tobin v. Liberty Mut. Ins. Co., 553 F.3d 121, 130 (1st
Cir. 2009).  See Docket No. 23 at pp. 14-16.  Franceschi argues
that the "continuing violation" was CVS's discriminatory practice
of hiring and promoting only young females to work in its beauty
department.  Id.  It is well-settled, however, that the continuing
violation doctrine does not apply to discrete acts of alleged
discrimination.  Ayala v. Shinseki, 780 F.3d 52, 57 (1st Cir.
2015); Tobin, 553 F.3d at 130.  "Instead, [the doctrine] applies
only to claims that cannot be said to occur on a particular day and
that by their very nature require repeated conduct to establish an
actionable claim, such as hostile work environment claims." Ayala,
780 F.3d at 57.  Refusal to hire and failure to promote are
discrete acts that are "instantaneously actionable." Id. (citing
Morgan, 536 U.S. at 114).  Therefore, Franceschi's refusal to hire
claim was actionable the day CVS refused to hire Franceschi for the
beauty department, and her failure to promote claims were
actionable each time CVS did not promote her to fill an opening in
the beauty department.  Because these claims are actionable as

discrete acts, the continuing violation doctrine does not apply. Franceschi's attempt to resurrect her time-barred claims fails.

The Court **GRANTS** summary judgment in favor of defendant CVS as to Franceschi's refusal to hire and failure to promote claims brought pursuant to the ADEA.

## B. Discrete Adverse Employment Action Claims

A plaintiff alleging an adverse employment action in an ADEA case has the burden of proving, through direct or indirect evidence, that age was the "but-for" cause of the challenged action. Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177-80 (2009). When the plaintiff relies on only indirect evidence of discrimination, as Franceschi does here, the First Circuit Court of Appeals applies the three-stage burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Del Valle-Santana v. Servicios Legales De P.R., Inc., 804 F.3d 127, 129-30 (1st Cir. 2015).

In the first stage of this framework, the plaintiff must make out a *prima facie* case of age discrimination by establishing (1) that she was at least forty years old at the time of the challenged action; (2) that her work met her employer's legitimate expectations; (3) that her employer took adverse action against her; and (4) that her employer did not treat age neutrally in taking the adverse action or, if she was discharged, replaced her with a younger person. Id. (citing Brennan v. GTE Gov't Sys.

Corp., 150 F.3d 21, 26 (1st Cir. 1998)).   If the plaintiff establishes a *prima facie* case, the burden shifts to the employer to provide a "legitimate, nondiscriminatory reason" for the adverse action.   Id. at 130.   If the employer does this, then the burden shifts back to the plaintiff to show that the employer's proferred reason is a pretext and that "age was the but-for cause of the employer's adverse action."   Id. (quoting Velez v. Thermo King de P.R., Inc., 585 F.3d 441, 447-48 (1st Cir. 2009)).

Here, CVS moves for summary judgment based only on the first stage of the McDonnell Douglas framework, arguing that Franceschi has not established the third element of a *prima facie* case because her allegations (that are not time-barred) do not constitute adverse employment actions. (Docket No. 20 at pp. 12-14.)   Adverse employment actions are those that affect an employee's "terms, conditions, or privileges of employment."   29 U.S.C. § 623(a)(1). To be actionable, the adverse actions "must affect more than *de minimis* aspects of an employee's work, or trivial, subjectively perceived inconveniences."   Irizarry-Santiago v. Essilor Indus., 982 F. Supp. 2d 131, 136 (D.P.R. 2013) (Besosa, J.); see Cham v. Station Operators, Inc., 685 F.3d 87, 94 (1st Cir. 2012) ("An adverse employment action typically involves discrete changes in the terms of employment, such as hiring, firing, failing to promote, reassignment with significantly different

responsibilities, or a decision causing significant change in benefits." (internal quotation marks and citations omitted)).

Franceschi lists several acts that she considers discrete adverse employment actions. (Docket No. 23 at p. 17.) Excluding the allegations that are time-barred (*i.e.*, her refusal to hire and failure to promote claims), as well as the allegations with no support in the record, the Court pares the list down to the following discrete acts: (1) Franceschi's manager asked her to clean a refrigerator on one occasion; (2) Franceschi's manager assigned her to the self check-out area for a few days while other employees worked on a special assignment; (3) Franceschi's manager did not call other employees to provide back-up support at the cash registers on a busy day when Franceschi was working as a cashier; (4) Franceschi's manager scheduled her to work closing hours every night for one week; and (5) Franceschi's manager asked her to resign from the beauty department if she wanted to work only day shifts.

The first three items above do not qualify as adverse employment actions. CVS's store manager had the discretion to ask all employees to assist in different areas of the store depending on business needs. (Docket No. 19-6 at p. 2.) Although being asked to clean a refrigerator once, working in the self check-out area for a few days, and working one busy day without back-up support may have been undesirable and inconvenient for Franceschi,

these minor events did not affect a term, condition, or privilege of her employment.  See Morales-Vallellanes v. Potter, 605 F.3d 27, 38 (1st Cir. 2010) (holding that minor and temporary changes in assigned tasks that employee preferred to perform are not adverse employment actions in Title VII discrimination claim).

The fourth and fifth items may qualify as adverse employment actions.  The First Circuit Court of Appeals stated in the context of a Title VII retaliation claim that a schedule change may constitute an adverse employment action in certain circumstances, especially if the change causes the employee to suffer an undue hardship.  Id. at 39-40; see Washington v. Ill. Dep't of Revenue, 420 F.3d 658, 659 (7th Cir. 2005) (holding that change in employee's work hours was adverse employment action sufficient for prima facie case of retaliation where change affected employee's ability to care for her disabled child because jury could find that employer "set out to exploit a known vulnerability and did so in a way that caused a significant (and hence an actionable) loss"). Thus, requiring Franceschi to work closing hours for one full week, knowing that she previously closed only two nights per week because she had to take care of her disabled daughter, may be an adverse employment action.

Likewise, requiring Franceschi to resign from the beauty department to be able to work day shifts as a clerk/cashier may be considered a constructive demotion, which is an adverse employment

action.  See Claes v. Boyce Thompson Inst. for Plant Research, 88
F. Supp. 3d 121, 126-27 (N.D.N.Y. 2015) (finding that voluntary
transfer to new position constituted constructive demotion and
adverse action in ADEA claim where employer intentionally created
conditions so unpleasant that reasonable person would have been
compelled to request and accept transfer).  This is true even
though Franceschi's demotion did not result in a salary reduction
because it did result in less interesting and prestigious job
duties.  See Hernandez-Torres v. Intercont'l Trading, Inc., 158
F.3d 43, 47 (1st Cir. 1998) (identifying "disadvantageous transfer"
as example of adverse employment action in Title VII retaliation
claim); Sharp v. City of Houston, 164 F.3d 923, 933 (5th Cir. 1999)
("To be equivalent to a demotion, a transfer need not result in a
decrease in pay, title, or grade; it can be a demotion if the new
position proves objectively worse — such as being less prestigious
or less interesting or providing less room for advancement.").

   Nonetheless, Franceschi fails to meet the fourth element of a
prima facie age discrimination case as to these two actions.  No
evidence in the record suggests that CVS did not treat age
neutrally when it scheduled Franceschi to work closing hours for a
full week and then asked her to resign from the beauty department
if she wanted to work only day shifts.  For example, Franceschi did
not submit evidence showing that CVS did not require younger beauty
department employees to work closing hours for a full week or that

CVS replaced Franceschi with a younger person after she resigned from the beauty department.

"While the burden of establishing a prima facie case is 'not onerous,' the plaintiff is still required to prove the prima facie elements by a 'preponderance of the evidence.'" Del Valle-Santana, 804 F.3d at 131 (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)).  Franceschi failed to prove the third and fourth elements of a *prima facie* age discrimination case for the discrete acts that she alleges were adverse employment actions. The Court therefore **GRANTS** summary judgment in favor of defendant CVS as to Franceschi's claims of discrete acts of age discrimination.

## C.   Hostile Work Environment Claim

A plaintiff alleging a hostile work environment in violation of the ADEA must show:  (1) that she is a member of the class protected by the ADEA; (2) that she was subjected to unwelcome harassment; (3) that the harassment was based on age; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of her employment and create an abusive work environment; (5) that the harassment was both subjectively and objectively offensive; and (6) that there is some basis for employer liability.  See O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001); Collazo v. Nicholson, 535 F.3d 41, 44 (1st Cir. 2008) (recognizing that hostile work environment claims

Civil No. 14-1694 (FAB)                                              16

may be brought pursuant to the ADEA); <u>Mojica v. El Conquistador</u>
<u>Resort & Golden Door Spa</u>, 714 F. Supp. 2d 241, 260 (D.P.R. 2010)
(Pérez-Giménez, J.).

     The fourth and fifth elements of a hostile work environment
claim are typically the most important. <u>O'Rourke</u>, 235 F.3d at 728.
In evaluating these elements, courts look to the record as a whole
and should not discount conduct that was not overtly motivated by
discriminatory animus.    <u>Id.</u> at 730.    To determine whether
harassment is sufficiently severe and pervasive, courts consider
the totality of the circumstances, including "the frequency of the
discriminatory conduct; its severity; whether it is physically
threatening or humiliating, or a mere offensive utterance; and
whether it unreasonably interferes with an employee's work
performance." <u>Id.</u> at 728-29 (quoting <u>Faragher v. City of Boca</u>
<u>Raton</u>, 524 U.S. 775, 787-88 (1998)). "[S]imple teasing, offhand
comments, and isolated incidents (unless extremely serious) will
not amount to discriminatory changes in the 'terms and conditions
of employment.'" <u>Faragher</u>, 524 U.S. at 788 (internal quotation
marks and citation omitted). To rise to the level of altering
terms and conditions of employment, the workplace must "permeate[]
with discriminatory intimidation, ridicule, and insult." <u>Perez v.</u>
<u>Horizon Lines, Inc.</u>, 804 F.3d 1, 6 (1st Cir. 2015) (quoting
<u>Kosereis v. Rhode Island</u>, 331 F.3d 207, 216 (1st Cir. 2003)).

Here, Franceschi bases her hostile work environment claim on her manager's actions during the weeks leading up to her resignation (asking her to clean the refrigerator, assigning her to the self check-out area, not providing her with back-up support on a busy day, scheduling her to work closing hours, and asking her to resign from the beauty department to be able to work day shifts) and on other employees' age-related comments on unknown dates ("I knew you were old, but not that old."; "I'm a lettuce and you are the grass.";[4] and "Be careful that you don't fall because we cannot find your parts.")

None of this conduct was severe in nature or physically threatening, although it may have been mildly inconvenient or humiliating for Franceschi. The only conduct that interfered with her work performance was when her manager scheduled her to work closing hours one week, which she could not do because she had to take care of her disabled daughter. Two of the age-related comments were made just one time and were mere isolated, offensive utterances. Although the third comment was made several times, the employees ceased making the comment after Franceschi complained to

---

[4] In her memorandum in opposition to summary judgment, Franceschi states that this comment was "I am fresh lettuce and you are dry grass." (Docket No. 23 at p. 11.) For record support, she cites to Docket No. 19-2 "at page 168, lines 1-24." Docket No. 19-2 is a one-page document that does not have a page 168. The only place the Court finds support in the record for a comment similar to this is in Franceschi's deposition, but the words "fresh" and "dry" do not appear in the text. See Docket No. 19-3 at p. 56.

an assistant manager.  Considering the record as a whole in the light most favorable to Franceschi, the Court concludes that no jury rationally could find that CVS subjected Franceschi to age-based harassment that was so severe and pervasive that it altered the terms and conditions of her employment.

Accordingly, the Court **GRANTS** summary judgment in favor of CVS as to Franceschi's hostile work environment ADEA claim.

**D.   Constructive Discharge Claim**

A plaintiff alleging a constructive discharge in violation of the ADEA must show that "the working conditions imposed by the employer had become so onerous, abusive, or unpleasant that a reasonable person in the employee's position would have felt compelled to resign." Velazquez-Fernandez v. NCE Foods, Inc., 476 F.3d 6, 12 (1st Cir. 2007) (quoting Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 54 (1st Cir. 2000)); see Torrech-Hernandez v. Gen. Elec. Co., 519 F.3d 41, 50 (1st Cir. 2008) (plaintiff must demonstrate that "conditions were so intolerable" that her decision to resign was "effectively . . . void of choice or free will").

The United States Supreme Court explained that a constructive discharge claim requires a "further showing" beyond that necessary to establish a hostile work environment. Pa. State Police v. Suders, 542 U.S. 129, 134 (2004) (a plaintiff claiming constructive discharge must show that the hostile work environment "became so intolerable that her resignation qualified as a fitting response");

accord Marrero v. Goya of P.R., Inc., 304 F.3d 7, 28 (1st Cir. 2002); Landgraf v. USI Film Products, 968 F.2d 427, 430 (5th Cir. 1992) ("To prove constructive discharge, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment.")

Here, because Franceschi's working conditions were not intolerable enough to create a hostile work environment, as discussed in the previous section, those conditions necessarily did not reach the greater level of severity required to establish a constructive discharge claim.   See Suders, 542 U.S. at 134. Franceschi has not pointed to evidence in the record from which a jury could reasonably conclude that her working conditions at CVS were so intolerable that a reasonable person in her position would have felt compelled to resign.   Accordingly, the Court **GRANTS** summary judgment in favor of CVS as to Franceschi's constructive discharge ADEA claim.

## IV.   PUERTO RICO LAW 100 CLAIM

Puerto Rico Law 100, Puerto Rico's general employment discrimination statute, makes it unlawful for an employer to discharge or discriminate against an employee, or to refuse to hire a person, on the basis of age.   P.R. Laws Ann. tit. 29, § 146.   CVS moves for summary judgment on Franceschi's Law 100 claim on the same grounds that it moved for summary judgment on her ADEA claim - that some claims are time-barred and that, for the other claims,

Franceschi has adduced no evidence that she was subject to age discrimination.  (Docket No. 20 at pp. 21-22.)

A one-year statute of limitations applies to Law 100 claims, and those claims accrue when the employee becomes aware of her injury.  Am. Airlines, Inc., 133 F.3d at 124.  Filing an administrative charge with the ADU or the EEOC tolls the statute of limitations for Law 100 claims until the administrative proceeding concludes.  See Rodriguez-Torres v. Caribbean Forms Mfr., Inc., 399 F.3d 52, 61 (1st Cir. 2005).

Here, Franceschi alleges that CVS refused to hire her for a position in the beauty department in January 2010, and thereafter, repeatedly failed to promote her from part-time clerk/cashier to full-time beauty advisor.  (Docket No. 1 at pp. 2-5.)  It is uncontested, however, that CVS promoted Franceschi to part-time beauty advisor on April 1, 2012, and to full-time beauty advisor on October 14, 2012.  See Docket Nos. 19-3 at pp. 16-18; 19-4 at p. 5; 19-8.  It is also uncontested that no one else was hired to the beauty department at the Old San Juan store between April and October 2012.  See Docket No. 19-7.  Thus, framing Franceschi's injury as not being promoted to full-time beauty advisor, the latest date Franceschi became aware of that injury was on April 1, 2012, when she was promoted to part-time beauty advisor.  Franceschi waited until September 18, 2013, more than a year later, to file a discrimination charge against CVS.  (Docket No. 24-6.)

Her Law 100 refusal to hire and failure to promote claims are therefore time-barred.

The Court turns to the merits of Franceschi's remaining Law 100 claims.  As it applies to age discrimination cases, Law 100 "differs from the ADEA only with respect to how the burden-shifting framework operates."  Dávila v. Corporación de P.R. para la Difusión Pública, 498 F.3d 9, 18 (1st Cir. 2007).  The plaintiff still has the same burden of persuasion to show that she suffered an adverse employment action that was motived by age discrimination.  Velázquez-Fernández, 476 F.3d at 11.  Thus, "[o]n the merits, age discrimination claims asserted under the ADEA and under Law 100 are coterminous."  Dávila, 498 F.3d at 18 (affirming summary judgment for employer on supplemental Law 100 claim because plaintiff "adduced no significantly probative evidence that his discharge was motivated by age").

As discussed above for Franceschi's ADEA claim, several of her allegations do not amount to actionable adverse employment actions. For the two actions that may be considered adverse actions (scheduling her to work closing hours one full week and requiring her to transfer to a clerk/cashier position to be able to work only day shifts), Franceschi adduced no evidence from which a jury could reasonably infer that those actions were motivated by age discrimination.  The merits analysis for Franceschi's Law 100 claim

is therefore the same as the analysis for her ADEA claims.  See Dávila, 498 F.3d at 18.

Thus, for the same reasons that it granted summary judgment on Franceschi's ADEA claims, the Court **GRANTS** summary judgment in favor of CVS on Franceschi's Law 100 claim.

### V.  PUERTO RICO ARTICLE 1802 CLAIM

Article 1802 Puerto Rico Civil Code is Puerto Rico's general tort statute and provides that a person who "causes damage to another through fault or negligence shall be obliged to repair the damage so done."  P.R. Laws Ann. tit 31, § 5141.  CVS moves for summary judgment on Franceschi's Article 1802 claim on the ground that because Franceschi filed claims pursuant to special state and federal laws addressing age discrimination, she cannot bring an Article 1802 claim based on the same allegations of age discrimination.  (Docket No. 20 at pp. 22-23.)

The Puerto Rico Supreme Court and courts in this District have held that when a specific labor or employment law covers the type of conduct for which a plaintiff seeks relief, she is barred from also bringing a claim pursuant to Article 1802 based on the same alleged conduct.  See Pagán Colón v. Walgreens of San Patricio, Inc., 190 P.R. Dec. 251, 260 (2014); Vélez-Sepúlveda v. GlaxoSmithKline, P.R., Inc., Civ. No. 13-1909(SCC), 2015 WL 4389529, at *7 (D.P.R. July 15, 2015) (Carreño-Coll, Mag. J.); Campos v. Safety-Kleen Sys., Inc., 98 F. Supp. 3d 372, 386 (D.P.R.

2015) (Delgado-Hernández, J.); <u>Irizarry-Santiago v. Essilor Indus.</u>, 982 F. Supp. 2d 131, 140 (D.P.R. 2013) (Besosa, J.); <u>Rosario v. Valdes</u>, Civ. No. 07-1508(CCC), 2008 WL 509204, at *2 (D.P.R. Feb. 21, 2008) (Cerezo, J.).

Here, Franceschi fails to point to any allegedly negligent conduct separate from that covered by specific employment discrimination laws.  Instead, Franceschi argues that the factual basis of her Article 1802 claim is CVS's "age-based discriminatory comments, conduct[,] and treatment."  (Docket No. 23 at p. 25.) This is precisely the type of conduct covered by claims brought pursuant to the ADEA and Law 100.  Accordingly, the Court **GRANTS** summary judgment in favor of CVS on Franceschi's Article 1802 claim.

### VI.   CONCLUSION

For the reasons explained above, the Court **GRANTS** defendant CVS's motion for summary judgment, (Docket No. 19).  Plaintiff Franceschi's ADEA and Puerto Rico law claims are **DISMISSED WITH PREJUDICE.**

Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, April 27, 2016.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE
